The opinion of the Court was delivered by
Withers, J.
The testimony in this ease was wholly for the arbitrament of the jury, since there was such evidence on both sides as to make them the exclusive tribunal for the decision of the matter of fact.
The question for this Court is, whether the following instruction was fight, to wit: “Was there a disease of a vital organ, existing in a formed state, at the time of the sale ?”
2. “ A disease of any sort, easily remoYed, if by neglect or *280 maltreatment allowed to prove fatal, should not he accounted unsoundess.”
1. The difficulty of applying a standard of law is not just cause of complaint against the law itself, or of dissatisfaction with the tribunals that are charged with its administration. Rules we must have, they must be general, to be true in themselves and to be fitted to embrace the infinite variety of individual instances to which they are to be applied. We must define unsoundness, in the physical, as we must malice and fraud and deceit, and so forth, in the' moral nature. If the special circumstances present a difficulty in adjudging the presence of the one or the other, this is to be imputed either to insufficiency of evidence, or to our natural incapacity to explore with the certainty of science matters that lie deeply buried in obscurity; or to both these causes. Hence comes the imperfect result of our efforts to ascertain, in a given case, with satisfactory certainty, the unsoundness of a slave or a horse, under any rule of law that ever has been or can be devised. The jury are necessarily to play a chief part in this numerous, increasing and troublesome class of cases.
The proposition laid before the jury, in the present case, has been announced as the guide for them in a vast multitude of instances, since it was authoritatively adopted. This was done in Smith vs. Rice, 1 Bail. 648. In that instance Judge Evans charged the jury thus, “ It did not seem that the negro in question was otherwise diseased than by a disorder, which a physician, who attended her, testified, was perfectly within the control of medicine, and did not permanently affect her value.” The jury were instructed, if they agreed to this, to find for the vendor, which they did. Uponappeal no error was detected, and in the opinion pronounced this language is used. The property sold should appear to be subject to “ some permanent physical defect, calculated materially to affect its value.” Although a recision of the contract was then in view, yet a reduction in *281 price, for a partial unsoundness, was also in question, for the alternative was presented'to the jury, and the same definition of unsoundness was applied, and was, indeed, necessarily applicable to either branch of the enquiry.
In Stephens vs. Chappell, 3 Strob. 83, it was said, “unsoundness consists in some organic disease, in a formed state, evidenced by symptoms, or some clearly contagious disease, such as measles or small-pox, the infection of which existed in the system at the time of sale.” Evidenced by symptoms was a material addition in that case, because it was intended to determine, that in eases of unsoundness, developed after the sale in the form of inflammatory fever, the symptoms of that form of disease should be co-existent with the transfer of the property, else the inquiry as to the seeds of such description of unsoundness being then planted, should be shut out; because full experience had shown how completely conjectural was all testimony upon that subject, by scientific witnesses or others. Gadsden, the present plaintiff, was not held to show symptoms obvious and observed, but no more than an existing disease of a vital organ in a formed state.
A post-mortem examination might show that, in relation to a chronic disease of such an organ, and his evidence tending in that direction, with all to the contrary, was heard and i*e-solved by the jury.
There are “ organs vital,” and those that are not, although it may demand professional knowledge to discriminate between them, and the use of those words is only another mode of expressing the doctrine of Smith vs. Rice, for surely a cut upon a finger cannot, in itself, be a permanent disease, or one materially impairing the value of a slave.
2. The second point stated is really but another mode of expressing the first, or contains but an illustration of it. If a temporary ailment of a negro should be accounted unsoundness, what would be the consequences? In avast proportion of cases, *282 there would be a reclamation: or recision; on refusal there would be a law-suit. If fatal consequences followed, it is plain, that a vendor, who had parted with the control of a negro, who is a volunary agent so far capable of heedless or reckless mischief to himself as to be withdrawn to a degree from the stringent rule fixing the liability of a common carrier, who can expose himself to causes that shall convert a trifling ailment into fatal disease, would be held responsible for such consequences as he could avoid or control, and the more likely to be visited upon him, if the purchaser knows that any existing ailment is to be regarded unsoundness, and knowing it, chooses to consider himself released from that care or prudence, in the management of the slave and his ailment, which no rule of law ought to suggest or encourage. And to which if no more than a technical rule shall bind him, as intimated in Williams vs. Vance, Dud. 99, it will be truly difficult for the vendor to enforce.
But it is enough to resort to our own case of Rivers vs. Gruget, 2 N. & McC. 265, where we find the following language by Johnson, J., “ Every slight or temporary defect will not warrant a recision of the contract, or a recovery of the price paid; it ought to be of that character which renders the thing sold permanently less valuable, either as to duration or extent: any other rule would tend to the utter dissolution of all contracts, as there is scarcely any article of traffic which will not exhibit some mark or blemish which might escape the notice of a close observer.”
To the same effect is the opinion of Chief Justice Eyre, in Garment vs. Barr, 2 Esp. 673; and of Coleridge J., in Bolden vs. Brogden, 2 M. & Rob. 113. .The English courts have since departed from such position, and regard any temporary defect in a horse, unfitting him for the time for his natural usefulness (as they express it,) to be unsoundness: vide Kiddell vs. Burnard, 9 Mees. & Wels. 668, (marg.) They even go so far as to *283 use the test, whether a cough actually made a horse, at the time of sale, less capable of immediate work. Yet Parke, B. (as maybe seen in the same case,) who seems to have the strongest impressions upon the subject, admits, that “ were this matter presented to us now for the first time, we might deem it proper to grant a rule, but -the matter has been, we think, settled by previous cases, and the opinion which we now express, is the result of deliberate consideration.”
As our previous cases and inveterate circuit practice settle the contrary, and as we are right, Baron Parke himself being the judge, we may imitate his court in pursuing our track, for the reasons assigned by himself.
We have been referred to the case of Bell vs. Jeffreys, 13 Iredell, 356, wherein it is decided that myopy or near-sightedness, is unsoundness. Such a position was taken at Edgefield, at the Fall Term, of 1852, and overruled, whereupon an appeal was taken, and either it was abandoned before the hearing, or if not, it was dismissed: it is not distinctly recollected which.
The position of the Court of North Carolina, was maintained by a majority; Ruffin dissentimg, and assigning such reasons as are not easily answered, and such as are very agreeable to the course of those of our cases which may be regarded as furnishing analogies. The observations of Justice Pearson, who spoke for the majority, are quite in the train of the English example already' referred to, and which may be found exhibited in Oliphant on the Law of Horses, chap. 3. Stress was laid upon the word “ healthy” which was coupled with the word “ sound,” (as it is in the case now before us,) by Judge Pearson. We are not prepared to adopt the views expressed as to the efficacy of that word. It is sufficient for this occasion to say, that at any rate, there was no more evidence to prove the negro, now the cause of action, not healthy, at the time of the sale, than to prove him not sound, allowing there is a difference in the legal import of the words.
*284 Wherefore as we discover no error in law, upon the circuit, and feel no warrant to supersede the action of the jury upon the facts, the motion for a new trial must be dismissed, and it is ordered accordingly.
O’Neall, Whitner, Glover and Munro, JJ., concurred.
Wardlaw, J., absent.

Motion dismissed.